**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

No. 13-1613

————————

ROLF KAMP,

                    Plaintiff - Appellant,

          v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY,

                    Defendant - Appellee.

————————

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.   Joseph F. Anderson, Jr., District
Judge.  (0:12-cv-00904-JFA)

————————

Argued:  March 18, 2014              Decided:  May 7, 2014

————————

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

————————

Affirmed by unpublished per curiam opinion.

————————

**ARGUED**: Ashley White Creech, MCGOWAN, HOOD & FELDER, LLC, Rock
Hill, South Carolina, for Appellant.   Theodore David Rheney,
GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for
Appellee.   **ON BRIEF**: Chad A. McGowan, MCGOWAN, HOOD & FELDER,
LLC, Rock Hill, South Carolina, for Appellant.   Jennifer D.
Eubanks, GALLIVAN, WHITE & BOYD, P.A., Greenville, South
Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rolf Kamp sued Empire Fire and Marine Insurance Company seeking insurance coverage for injuries he suffered in an accident caused by an uninsured motorist. The district court determined that the policy at issue did not include the coverage Kamp sought and granted summary judgment for Empire. We agree with the district court and therefore affirm.

I.

A.

On April 8, 2011, Kamp rented a motorcycle from R&K Harley-Davidson, Inc., in Charlotte, North Carolina. Through the written rental agreement, which Kamp signed, he automatically received automobile insurance coverage up to the minimum limits required by North Carolina law. Kamp separately purchased supplemental insurance, which provided coverage beyond the minimum limits. Both the minimum-coverage policy and the supplemental policy were issued by Empire.

Later that same day, while driving the motorcycle in South Carolina, Kamp was involved in an accident. Another driver turned left in front of him, striking his motorcycle and severely injuring him. The driver who caused the accident was uninsured. Kamp sued her in South Carolina state court and eventually obtained a $2,500,000 default judgment. He then

filed an insurance claim with Empire, seeking uninsured motorist ("UM") coverage under both the minimum-coverage and supplemental policies. Empire paid Kamp $30,000 in accordance with the minimum-coverage policy, but denied any additional coverage under the supplemental policy. According to Empire, the supplemental policy excluded UM coverage.

B.

Because this case turns on the scope of the coverage offered by Empire in the two policies, we briefly summarize the relevant documents and provisions.

Empire issued the minimum-coverage and supplemental policies to Harley-Davidson Financial Services, Inc. Separate documents extend each policy to R&K, the North Carolina-based franchise from which Kamp rented the motorcycle. Under the minimum-coverage policy, R&K rentees automatically receive liability insurance coverage up to the minimum limits required by North Carolina law: $30,000 per person for bodily injury; $60,000 per accident for bodily injury; and $25,000 per accident for property damage. Rentees receive equal amounts of UM coverage. At issue in this case is the supplemental policy, which offers additional coverage beyond what the minimum-coverage policy provides.

The supplemental policy includes three categories of coverage: Supplemental Rental Liability Insurance ("SLI");

Personal Accident Coverage; and Personal Property Coverage. A rentee may purchase coverage under any or all of these categories by paying an associated premium. Kamp purchased all three, and he contends that the SLI category includes up to $1,000,000 in additional UM coverage.

The supplemental policy's terms are set out in three component documents. The first is a master document, titled "Policy Provisions," and it applies nationwide. With respect to SLI, the master document states that the policy "provides excess auto liability insurance and only applies to a loss involving bodily injury and property damage caused by an accident and resulting from the use of a covered rental vehicle." J.A. 63 (internal quotation marks omitted). The master document further states that "the most [Empire] will pay for 'ultimate net loss' is the difference between the limits of liability provided by the 'underlying insurance'[1] and the [SLI] limit shown in the Declarations." Id. at 64. A separate provision in the master document expressly excludes coverage for "[l]iability arising out of or benefits payable under any uninsured or underinsured motorists law, in any state." Id.

---

[1] "Underlying insurance" refers to the separate minimum-coverage policy, which provides the minimum amounts of coverage required by law. See J.A. 68.

The second component of the master document is the "Declarations," which detail the specific coverage limits for each category of coverage. Within the SLI category, the Declarations list limits of $1,000,000 for both "Bodily Injury and Property Damage Liability" and "Uninsured/Underinsured Motorist Coverage." Id. at 57. The Declarations specify that the premium for each of these coverages is "PER CERT."[2] Id.

State-specific endorsements, the final component of the supplemental policy, modify the master document as it applies to particular states. The endorsement for North Carolina (applicable to R&K) does not include any modifications relevant to this appeal, nor does it mention UM coverage. Endorsements for six other states, however, purport to "add[]" to or "modif[y]" the master document by providing UM coverage. See, e.g., id. at 125 ("Florida Endorsement Adding Uninsured/Underinsured Motorist Coverage to Supplemental Liability Insurance Policy"). According to Empire, these six states--Florida, Louisiana, New Hampshire, North Dakota, Vermont, and West Virginia--"all require [that] UM coverage be offered in connection with an excess liability policy."

---

[2] The parties agree that this notation refers to certificates of insurance, the separate documents that extend the supplemental policy to individual Harley-Davidson franchises.

Appellee's Br. at 25. Accordingly, Empire asserts, the endorsements modify the master document (which Empire contends does not generally include UM coverage) to make the policy compliant with the respective state laws. The limit for UM coverage in these endorsements is generally the same $1,000,000 limit listed in the Declarations, but a few, such as North Dakota's, specify lower limits. Each of the six endorsements expressly overrides the master document's UM-related exclusion.

Individual Harley-Davidson franchises become policyholders of the supplemental policy through certificates of insurance. R&K's certificate states that it "neither affirmatively nor negatively amends, extends or alters the coverage provided by the [supplemental policy]," and further provides as follows:

> [R&K] is an additional Policyholder under [the supplemental policy] for the following coverages/limits[:] . . .
>
> Supplemental Liability Insurance[:]
>
> Excess Auto Liability[:] $1,000,000.

J.A. 53. Additionally, the certificate states that "the maximum Limit of Liability for the Supplemental Rental Liability Coverage is the difference between the Limit of Liability indicated on the Declarations and the [minimum-coverage policy]." Id. at 53-54. The certificate does not expressly mention UM coverage.

C.

6

After Empire denied Kamp's claim for UM coverage under the supplemental policy, Kamp sued Empire in South Carolina state court. Kamp's complaint alleged that Empire breached the supplemental policy by refusing to pay him UM benefits up to $1,000,000. Invoking diversity jurisdiction, Empire removed the case to the U.S. District Court for the District of South Carolina.

The parties engaged in discovery and filed cross-motions for summary judgment. Relying on the master document's reference to the Declarations, Kamp asserted that the supplemental policy unambiguously provides him $1,000,000 in UM coverage. And even if the policy is ambiguous, he argued, North Carolina rules of construction require resolving any ambiguity in his favor. Alternatively, Kamp contended that North Carolina's Motor Vehicle Safety and Financial Responsibility Act (the "MVSFRA") requires reformation of the policy to include the coverage. Empire, on the other hand, argued that Kamp was not entitled to UM coverage because no such coverage was provided by the North Carolina endorsement. Empire further argued that the MVSFRA did not apply.

The district court granted summary judgment for Empire. See Kamp v. Empire Fire & Marine Ins. Co., No. 3:12-cv-904-JFA, 2013 WL 310357 (D.S.C. Jan. 25, 2013). Citing the exclusion clause in the master document, the court held that the

supplemental policy "unambiguously excludes UM coverage." Id. at *5. The court acknowledged that the Declarations include a $1,000,000 limit for UM coverage, but it determined that this limit is merely a maximum. As such, the court concluded, it pertains only to those states for which a state-specific endorsement expressly provides UM coverage. In the court's view, this understanding of the policy was consistent with the master document's description of the limits in the Declarations as representing "the most [Empire] will pay." See J.A. 64 (emphasis added). As neither the North Carolina endorsement nor R&K's certificate mentions UM coverage, the court concluded that Kamp was not entitled to it.

The court also observed that Kamp's construction of the supplemental policy would extend $1,000,000 of UM coverage to all rentees, in every state. In the court's view, this reading failed to account for the varying UM coverage provisions of the state-specific endorsements. For example, a reading of the master document extending $1,000,000 in UM coverage to every rentee would conflict with the North Dakota endorsement providing UM coverage only for a lesser amount. By contrast, when the supplemental policy is read to generally exclude UM coverage, "there is no inconsistency in this or any other state-specific situation." Kamp, 2013 WL 310357, at *6. This

consideration, the court held, "resolve[s]" "[a]ny perceived ambiguity in the contract." <u>Id.</u>

Finally, rejecting Kamp's alternative argument, the district court declined to reform the supplemental policy pursuant to the MVSFRA, which requires certain insurance policies to offer UM coverage in equal amounts with general liability coverage. <u>See</u> N.C. Gen. Stat. §§ 20-279.21(a), (b)(3). Relying on the text of the statute, as well as North Carolina case law, the court determined that the MVSFRA applies only to an underlying insurance policy that satisfies the state's minimum-coverage requirements, not to an <u>excess</u> liability policy like the supplemental policy here.

Kamp appealed, arguing that the district court misconstrued both the supplemental policy and the MVSFRA. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review the district court's order granting summary judgment de novo, "viewing the facts and the reasonable inferences therefrom in the light most favorable to [Kamp]." <u>Bonds v. Leavitt</u>, 629 F.3d 369, 380 (4th Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

Because our jurisdiction in this case derives from diversity of citizenship, we apply South Carolina's choice-of-law rules. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). In a contract dispute, South Carolina law requires courts to apply the substantive law of the place where the contract was made. See Unisun Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182, 184 (S.C. Ct. App. 1993). Based on these principles, the parties agree that North Carolina law governs construction of the supplemental policy.

Under North Carolina law, "courts must examine [an insurance] policy from the point of view of a reasonable insured." Register v. White, 599 S.E.2d 549, 553 (N.C. 2004). "Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony." Id. (internal quotation marks omitted). Ambiguous coverage provisions "must be construed liberally so as to afford coverage whenever possible by reasonable construction." See N.C. Farm Bureau Mut. Ins. Co. v. Stox, 412 S.E.2d 318, 321 (N.C. 1992). Conversely, ambiguous "exclusionary provisions . . . will be construed against the insurer." Id. A policy's terms are ambiguous when they are "fairly and reasonably susceptible to

10

either of the constructions for which the parties contend."
Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172
S.E.2d 518, 522 (N.C. 1970).

                                    B.

     After having the benefit of oral argument and carefully
reviewing the briefs, record, and controlling legal authorities,
we conclude that the district court's analysis was correct.  As
the district court's order thoroughly explained, Kamp's proposed
construction of the supplemental policy is incompatible with the
state-specific endorsements.  Six of these endorsements, after
all, purport to "modif[y]" or "add[]" to the master document by
providing the same UM coverage that Kamp contends it already
includes.  Only Empire's reading of the policy "bring[s] . . .
into harmony" all of its clauses.  See Register, 599 S.E.2d at
553.  Accordingly, we conclude that the supplemental policy
unambiguously excludes UM coverage as applied to Kamp.

     Moreover, because North Carolina's MVSFRA does not apply to
policies, like this one, that provide only excess liability
coverage, no reformation of the supplemental policy is required.
See Progressive Am. Ins. Co. v. Vasquez, 515 S.E.2d 8, 13 (N.C.
1999) ("Where there are separate and distinct excess liability
and underlying policies, [UM] coverage is not written into the
excess liability policy by operation of law and exists only if
it is provided by the contractual terms of the excess policy.");

                                    11

see also Piazza v. Little, 515 S.E.2d 219, 220 (N.C. 1999) (per curiam) (same).

In sum, we agree with the district court's determination to award Empire summary judgment.

III.

The district court's judgment is therefore

AFFIRMED.